

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| GEORGE E. MARTIN, | ) | |
| | ) | |
| Appellant, | ) | WD84781 |
| | ) | |
| v. | ) | OPINION FILED: |
| | ) | October 11, 2022 |
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Callaway County, Missouri**
The Honorable J. Hasbrouck Jacobs, Judge

Before Division Four: Gary D. Witt, Chief Judge, Presiding, Anthony Rex Gabbert, Judge and W. Douglas Thomson, Judge

George Martin ("Martin") appeals the judgment of the Circuit Court of Callaway County, Missouri ("motion court"), denying, after evidentiary hearing, his motion for post-conviction relief pursuant to Rule 29.15.[1] Martin argues that the motion court erred in (1) denying Martin's claim that his trial counsel ("Trial Counsel") was ineffective for failing to call a fact witness at trial; and (2) denying Martin's claim that Trial Counsel was ineffective for giving an incompetent closing argument. We affirm.

---

[1] All rule references are to Missouri Supreme Court Rules (2022), unless otherwise indicated.

## Factual and Procedural Background[2]

Martin sexually abused four boys during the summer of 2016: sixteen-year-old J.M., twelve-year-old D.Y., eleven-year-old N.Y., and eleven-year-old D.W.[3] J.M., D.Y., N.Y., and D.W. spent time with Martin at his home on multiple occasions throughout the summer. At the time, Martin was fifty-six years old and lived in a trailer on his parents' property.

One night when J.M. spent the night at Martin's trailer, J.M. took his prescribed sleeping medication and fell asleep. J.M. woke up the next morning to Martin's penis in his anus. He pushed Martin off, fled the property, and contacted a friend to pick him up and give him a ride home. J.M. informed his parents what happened, and his parents contacted law enforcement. J.M. was interviewed by a forensic interviewer. A search warrant was obtained and DNA consistent with J.M.'s DNA profile was identified on the swab from Martin's penis. Martin was arrested later that day after being interviewed by law enforcement. News of Martin's arrest prompted the parents of D.Y., N.Y., and D.W. to ask the boys if anything inappropriate had ever happened while they were at Martin's trailer. The parents decided to contact law enforcement based on the information provided by the boys. The boys reported that Martin frequently asked the boys to take their clothes off, sleep naked with Martin in his bed, watch pornographic movies and Martin would touch their penises and ask them to touch his penis. J.M. reported that Martin had taken

---

[2] "On appeal from the motion court's ruling on a Rule 29.15 motion, we view the evidence in the light most favorable to the verdict in the underlying criminal case." *Hutton v. State*, 345 S.W.3d 373, 374 n.1 (Mo. App. W.D. 2011) (citation omitted).

[3] To protect the identity of the victims pursuant to section 595.226 we refer to the victims by initials.

naked photographs and videos of the boys including while masturbating to pornographic videos. A second search warrant was obtained and a photograph of D.W. naked, touching his penis, while Martin sat naked next to him was discovered on a laptop computer located in the residence.

A Second Amended Information in Lieu of Indictment charged Martin with twelve counts including: one count of first-degree sodomy in violation of Section 566.060[4]; one count of second-degree statutory sodomy in violation of Section 566.064; three counts of sexual misconduct involving a child by inducement in violation of Section 566.083; three counts of enticement of a child in violation of Section 566.151; three counts of first-degree child molestation in violation of Section 566.067; and one count of sexual exploitation of a minor in violation of Section 573.023.

The evidence set forth above was adduced at trial.

Trial Counsel ended her closing argument by telling the jury:

I say to you that Mr. Martin is -- is doing what he believes is correct, and we all know it isn't. The evidence showed that he was a very lonely man. The only way he could get these young men to come to his house was to let them do whatever they wanted to do, not necessarily what their parents would let them do, or if their parents knew would approve of.

They got to shoot guns. How many young boys get to shoot guns? Man. They got to cuss without reprimand. How many young boys get to cuss and carry on without reprimand? They got to run around naked. How many boys get to do that? Now, I'm not saying that's a good thing, I'm just saying that's how Mr. Martin saw it through his eyes.

Mr. Martin was under a lot of stress. His father was trying to remove him out of that property. Even to the point of turning off the water, so he did not have many friends, especially his father. And at some point, it accelerated,

---

[4] All statutory references are to R.S.Mo 2016, as updated by the operative supplement.

the behavior accelerated. Nobody stepped in and said this was wrong. Nobody. The adults. The adult in that household, it's a very sad situation. So you have the -- you now have the burden of determining the future of Mr. Martin.

The jury found Martin guilty of all twelve counts and sentenced him to a total of sixty years in prison: thirty years for first-degree sodomy, seven years for second-degree statutory sodomy, four years for each count of sexual misconduct involving a child by inducement, thirty years for each count of enticement of a child, and fifteen years for each count of first-degree child molestation, all to run concurrently, with an additional thirty years for sexual exploitation of a minor to run consecutively.

On direct appeal, this court issued a *per curiam* order affirming Martin's convictions. *State v. Martin*, 584 S.W.3d 831 (Mo. App. W.D. 2019).[5] Martin timely filed a *pro se* motion for post-conviction relief pursuant to Rule 29.15, and an amended motion was filed by appointed counsel. The Motion Court held an evidentiary hearing on the amended motion.

Martin was represented at trial by Trial Counsel. Martin's sister, Teresa Martin Wallace ("Wallace"), was not called as a witness at Martin's trial although she indicated she had spoken to Trial Counsel and was present each day of the trial. Wallace testified at the PCR hearing that she visited Martin every weekend while she was on their family property taking care of their mother and regularly visited her brother's residence. The door was never locked and she never knocked; she just walked in unannounced. She testified

---

[5] Many of the facts herein are taken from the memorandum in support of the *per curiam* order without further attribution.

she had seen the boys at the residence but had never witnessed any inappropriate behavior or anyone naked. Wallace also testified at the motion hearing that she was at Martin's trailer the night that JM alleged he was sexually assaulted; she stopped by to visit with Martin, arriving at 11:00 p.m., and left to go to their parents' house around 3:00 a.m. The Motion Court then issued Findings of Fact and Conclusions of Law, as well as a Judgment and Order denying relief. This appeal follows.

## Standard of Review

Both points on appeal allege claims of ineffective assistance of counsel. Point I alleges counsel was ineffective for failing to call Wallace as a witness at trial, and Point II alleges counsel was ineffective in giving the above-quoted portion of the closing argument. "When reviewing a motion court's denial of a claim of ineffective assistance of counsel, the reviewing court is limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous." *Lindsey v. State*, 633 S.W.3d 547, 551 (Mo. App. W.D. 2021) (quoting *Hays v. State*, 360 S.W.3d 304, 309 (Mo. App. W.D. 2012)); Rule 29.15(k). "A judgment is clearly erroneous when, in light of the entire record, the court is left with the definite and firm impression that a mistake has been made." *Beck v. State*, 637 S.W.3d 545, 551-52 (Mo. App. W.D. 2021) (citing *Watson v. State*, 520 S.W.3d 423, 428 (Mo. banc 2017)). "The motion court's findings of fact and conclusions of law are presumed to be correct." *Beck*, 637 S.W.3d at 551-52 (citing *Hays*, 360 S.W.3d at 309).

## Analysis

Both points on appeal argue that the motion court erred in denying Martin's claims of ineffective assistance of counsel.

5

To establish ineffective assistance of counsel, a movant must prove "by a preponderance of the evidence that (1) trial counsel failed to exercise the level of skill and diligence that reasonably competent counsel would exercise in a similar situation and (2) the movant was prejudiced by that failure." *Dorsey v. State*, 448 S.W.3d 276, 286-87 (Mo. banc 2014) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). If a movant fails to satisfy either prong of the *Strickland* test, he or she is not entitled to post-conviction relief. *State v. Simmons*, 955 S.W.2d 729, 746 (Mo. banc 1997).

To satisfy the performance prong, movants "must overcome the strong presumption that counsel's conduct was reasonable and effective." *Johnson v. State*, 406 S.W.3d 892, 899 (Mo. banc 2013). This presumption is overcome when a movant identifies "specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance." *Id.* (internal quotation omitted).

To establish *Strickland* prejudice, "a movant must show a reasonable probability that, but for counsel's errors, the outcome would have been different." *Dorsey*, 448 S.W.3d at 287. "A reasonable probability exists when there is a probability sufficient to undermine confidence in the outcome." *Id.* (internal quotation omitted).

*Beck*, 637 S.W.3d at 551-52 (citing *Hoeber v. State*, 488 S.W.3d 648, 655 (Mo. banc 2016)).

### *Point 1; Failure to Call a Fact Witness*

Martin's first point on appeal argues that the motion court erred in denying Martin's claim that Trial Counsel was ineffective for failing to call Wallace as a witness at trial. Wallace is Martin's sister who frequently spent time with Martin at his trailer during the time leading up to Martin's arrest.

To succeed on a claim of ineffective assistance of counsel for failure to call a witness, the movant must establish: "(1) trial counsel knew or should have known of the existence of the witness; (2) the witness could be located through reasonable investigation; (3) the witness would testify; and (4) the witness's testimony would have produced a viable defense." *Davis v. State*, 486 S.W.3d 898, 909 (Mo. banc 2016). "The selection of witnesses and

6

evidence are matters of trial strategy, virtually unchallengeable in an ineffective assistance claim." *Jindra v. State*, 580 S.W.3d 635, 641 (Mo. App. W.D. 2019) (internal quotation omitted).

*Beck v. State*, 637 S.W.3d 545, 552 (Mo. App. W.D. 2021).

Martin argues that Wallace's testimony could have influenced the way in which the jury considered the evidence against Martin by casting doubt upon it. Wallace was present on the day of the trial, waiting outside the courtroom expecting to testify, but she was never called as a witness. Wallace would have testified that: a family member was at Martin's house every day of the week, and Wallace spent every weekend at the farm; Wallace never announced when she was coming, and Martin's door was always unlocked; Wallace never saw any inappropriate behavior or any of the boys naked or in distress; and Wallace was with Martin at his trailer until 3:00 a.m. on the night that Martin was alleged to have sexually assaulted J.M.

Although it is possible that Wallace's testimony could have had an effect on the jury, it is not likely that her testimony would have produced a viable defense for Martin. Failure to call a witness only constitutes ineffective assistance of counsel if the witness's testimony "unqualifiedly support[s] Movant." *Philips v. State*, 214 S.W.3d 361, 366 (Mo. App. S.D. 2007). Wallace's testimony would not have unqualifiedly supported Martin. It did not provide an alibi for Martin as to the acts committed against J.M. since she was only at Martin's house until 3:00 a.m. on the day J.M. was sexually assaulted, and he testified it was when he woke up in the morning that he discovered the assault. She also could not have unqualifiedly refuted the other boys' accounts of abuse. In fact, it is possible that her testimony could have *harmed* Martin's defense by corroborating that the boys often spent

7

time at Martin's house and that J.M. was alone with Martin on the night that J.M. reported the assault occurring. Also, on cross examination at the motion hearing, Wallace admitted that she "did wonder why--why the kids are there, where are their parents. . . ." The motion court pointed out that this testimony could have been even more prejudicial because it came from Martin's sister. Although it is not certain that Wallace's testimony would have been prejudicial, the obvious potential for her testimony to harm Martin's defense shows that it does not unqualifiedly support his defense. Therefore, the motion court's judgment finding Trial Counsel's failure to call Wallace as a witness did not constitute ineffective assistance of counsel was not erroneous.

Point 1 is denied.

***Point II; Closing Argument***

Martin's second point on appeal argues that the motion court erred in denying Martin's claim that Trial Counsel was ineffective for giving an incompetent closing argument. "Reasonable choices of trial strategy, no matter how ill-fated they appear in hindsight, cannot serve as a basis for a claim of ineffective assistance." *Hosier v. State*, 593 S.W.3d 75, 81 (Mo. banc 2019) (quoting *Anderson v. State*, 196 S.W.3d 28, 33 (Mo. banc 2006)). "Strategic choices made after a thorough investigation of the law and the facts relevant to plausible options are virtually unchallengeable." *Id.* "It is not ineffective assistance of counsel to pursue one reasonable trial strategy to the exclusion of another reasonable trial strategy." *Id.*

Martin argues that Trial Counsel's closing argument was incompetent because Trial Counsel failed to argue that the State's evidence was insufficient, implicitly conceded

Martin's guilt, decreased the likelihood of jury nullification, and failed to instruct the jury on lesser-included offenses.[6] Trial Counsel testified that her goal for the closing argument was to "invoke empathy" so the jury would consider Martin in a more favorable light when deliberating—a strategy that had been successful in the past with another client. Trial Counsel testified that she was careful *not* to concede Martin's guilt because Martin never admitted guilt, even though the evidence against him was overwhelming, and Martin's post-conviction counsel essentially acknowledged this. Instead, she was relying on the burden of proof. This is reasonable trial strategy and therefore not error.

Assuming Trial Counsel's closing argument had been in error, "[e]ven if a defendant shows that particular errors of counsel were unreasonable, . . . the defendant must show that they actually had an adverse effect on the defense." *Strickland*, 466 U.S. at 693. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding . . . not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id.* The defendant must show that the error was prejudicial for it to warrant reversal. *Dorsey*, 448 S.W.3d at 287. While it is possible that a different closing argument could have had *some* effect on the outcome of the trial, Martin has not shown that the closing argument had an effect so significant as to undermine the reliability of the outcome of the trial. Furthermore, Trial Counsel's closing argument was part of a reasonable trial strategy; it was reasonable for Trial Counsel to try to invoke empathy in the jury, because that strategy had worked for

---

[6] There were, in fact, no lesser-*included* offenses instructed. Trial Counsel's strategy was jury nullification or to get the jury to convict only on the lesser offenses of the many offenses with which Martin was charged, some very serious, as a compromise. This strategy is not challenged herein.

her in the past. Therefore, Martin's concerns with Trial Counsel's closing argument do not meet the requirements for ineffective assistance of counsel and the motion court's findings were not erroneous.

Point II is denied.

## Conclusion

The judgment of the motion court is affirmed.

_____
Gary D. Witt, Judge

All concur