**Terrance ANDERSON, Appellant,**

v.

**STATE of Missouri, Respondent.**

No. SC 87060.

Supreme Court of Missouri,
En Banc.

June 30, 2006.

Rehearing Denied Aug. 8, 2006.

William J. Swift, Office of Public Defender, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Andrew H. Hassell, Asst. Atty. Gen., Richard A. Starnes, Asst. Atty. Gen., for respondent.

PER CURIAM.

A jury convicted Terrance Anderson of two counts of first-degree murder for the homicides of Debbie and Stephen Rainwater. The jury recommended Anderson be sentenced to death for the murder of Mrs. Rainwater and to life without probation or parole for the murder of Mr. Rainwater. His convictions and sentences were affirmed on direct appeal in *State v. Anderson*, 79 S.W.3d 420 (Mo. banc 2002).[1]

---

1. For a detailed explanation of the facts of the homicides, see this Court's prior opinion.

Anderson sought post-conviction relief pursuant to Rule 29.15, and after an evidentiary hearing, the motion court denied him relief. Anderson now appeals the motion court's decision. Because Anderson was sentenced to death, this Court has jurisdiction. Mo. Const. art. V, § 10; order of June 16, 1988.

This Court finds that the motion court properly denied Anderson's post-conviction claims relating to his guilt, but wrongly denied him post-conviction relief relating to the imposition of the death penalty. The motion court's decision is affirmed in part and reversed in part, and this cause is remanded. On remand, a properly selected jury may again consider whether the death penalty is warranted for the killing of Debbie Rainwater.[2]

### I. Standard of Review

■ Review of denial of relief under Rule 29.15 is limited to determining whether the motion court's findings and conclusions are clearly erroneous. *Worthington v. State*, 166 S.W.3d 566, 572 (Mo. banc 2005). The motion court's findings are presumed correct. *Black v. State*, 151 S.W.3d 49, 54 (Mo. banc 2004). The motion court's disposition will only be disturbed if, after a review of the entire record, the reviewing court is left with the definite impression that a mistake has been made. *Worthington*, 166 S.W.3d at 572.

■ Anderson is entitled to post-conviction relief if he shows by a preponderance of the evidence that (1) his counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances and (2) his counsel's deficient performance prejudiced

him. *Strickland v. Washington*, 466 U.S. 668, 687–92, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Worthington*, 166 S.W.3d at 572–73.

■ To satisfy the first prong of the *Strickland* test, Anderson must overcome a strong presumption that counsel provided competent representation by showing "that counsel's representation fell below an objective standard of reasonableness." *Worthington*, 166 S.W.3d at 573. This standard is met by identifying specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance. *Id.* It is presumed that counsel's conduct was reasonable and effective. *Id.*

■ Reasonable choices of trial strategy, no matter how ill-fated they appear in hindsight, cannot serve as a basis for a claim of ineffective assistance. *Id.* "[S]trategic choices made after a thorough investigation of the law and the facts relevant to plausible opinions are virtually unchallengeable[.]" *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052. "Where counsel has investigated possible strategies, courts should rarely second-guess counsel's actual choices." *Middleton v. State*, 103 S.W.3d 726, 736 (Mo. banc 2003). It is not ineffective assistance of counsel to pursue one reasonable trial strategy to the exclusion of another reasonable trial strategy. *Worthington*, 166 S.W.3d at 573.

■ To satisfy the second prong of the *Strickland* test, Anderson is required to show that " 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Middleton*, 103 S.W.3d at 733 (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052). "A reason-

---

**2.** Anderson's sentence of life without probation or parole for the killing of Stephen Rain- water is not affected by this opinion.

able probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. "To prove ineffectiveness with regard to death penalty sentencing, [the defendant] must show that, but for his counsel's ineffective performance, there is a reasonable probability that the jury would have concluded after balancing the aggravating and mitigating circumstances, death was not warranted." *Rousan v. State*, 48 S.W.3d 576, 582 (Mo. banc 2001).

## II. Claims Relating to the Guilt Phase

Anderson makes five claims relating to the guilt phase, which are now addressed.

### A. Dr. English's Testimony

Anderson claims that his trial counsel was ineffective for failing to object on the grounds of section 552.020.14, RSMo 2000,[3] when the State called Dr. Byron English as a rebuttal witness in the guilt phase and he testified as to statements Anderson made during his section 552.020 competency examination.

Dr. English, a Department of Mental Health psychologist and forensic examiner, was designated to evaluate Anderson pursuant to section 552.020 to determine if he was competent to proceed to trial. The State called Dr. English during the guilt phase to rebut the evidence presented by the defense's two expert witnesses, Drs. Pincus and Lewis, who opined that Anderson suffered from a mental disease or defect at the time of the crimes.

Before the rebuttal phase of the trial began, defense counsel twice objected to the State calling Dr. English as a rebuttal witness because he had stated in his deposition that he was unable to render an opinion as to Anderson's mental state at the time of the crimes. The trial court overruled the objections, stating that it could not determine if Dr. English had relevant information until he testified. The trial court advised defense counsel to make clear on cross-examination Dr. English's inability to testify about Anderson's mental state at the time of the crimes, if his testimony raised that issue.

Dr. English was the state's only rebuttal witness. His testimony discussed the various types of tests he had Anderson perform and the results of some of those tests. He testified that he tested Anderson for somewhere between two to two and a half hours in 1999.[4] When asked if his evaluation indicated that Anderson suffered a mental disease or defect, Dr. English responded, "No."

On cross-examination by defense counsel, Dr. English stated that his evaluation did not "go into" Anderson's mental status "when the crime took place." Defense counsel elicited that Dr. English could not rule out that Anderson had a mental disease or defect that would manifest itself when he was under severe stress.

During redirect examination, however, the prosecutor asked: "Doctor ... the defendant denied any symptoms indicating depression, brain damage or any other mental disease or defect, didn't he?" Dr. English responded: "Yes, he did." The prosecutor highlighted this testimony during closing arguments, stating: "[Anderson] told Dr. English he didn't have any of the symptoms of any of those psychiatric disorders that the experts from the East Coast says he has."

Anderson argues that section 552.020.14 prohibited Dr. English's testimony and a

---

3. All further statutory references are to RSMo 2000.

4. The crimes occurred in 1997.

reasonably competent attorney under similar circumstances would have objected on that ground.

Section 552.020.14 provides:

*No statement* made by the accused in the course of any examination or treatment pursuant to this section and *no information received* by any examiner or other person in the course thereof, whether such examination or treatment was made with or without the consent of the accused or upon his motion or upon that of others, shall be admitted in evidence against the accused on the issue of guilt in any criminal proceeding then or thereafter pending in any court, state or federal. A finding by the court that the accused is mentally fit to proceed shall in no way prejudice the accused in a defense to the crime charged on the ground that at the time thereof he was afflicted with a mental disease or defect excluding responsibility, nor shall such finding by the court be introduced in evidence on that issue nor otherwise be brought to the notice of the jury.

552.020.14 (emphasis added).

 This section prevents testimony about statements made by the accused or information received during a section 552.020 examination being used as evidence on the issue of guilt.[5] Contrary to the State's assertions, portions of Dr. English's testimony were inappropriate under the prohibitions of section 552.020.14, particularly his testimony regarding Anderson's denial during the evaluation that he suffered a mental disease or defect. Dr. English's testimony was presented by the State as proof of Anderson's guilt—to show he was capable of deliberation. A reasonably competent defense counsel in similar circumstances would have objected to those portions of his testimony that violated section 552.020.14. The first prong of *Strickland* is met.[6]

 Although Anderson satisfied the first prong of *Strickland* on this issue, he is unable to satisfy the second prong in that he cannot show that he was prejudiced by his counsel's failure to object to Dr. English's testimony on the basis of section 552.020.14. Defense counsel ensured that Dr. English made clear that his evaluation of Anderson did not relate to Anderson's mental state at the time of the crimes. Dr. English testified that he could not rule out that Anderson suffered a mental disease or defect that would manifest itself under severe stress.

While there was little relevance in Dr. English's testimony, and indeed portions of it were prohibited under section 552.020.14, Anderson has failed to show that there is a reasonable probability that but for counsel's error, the result of his trial would have been different.

### B. Failure of Appellate Counsel

Anderson further claims that his direct appeal counsel was ineffective for failing to raise the issue that the trial court erred in allowing Dr. English to offer rebuttal testimony. He argues that a reasonably competent appellate counsel would have asserted that the trial court erred in overruling the objections trial counsel made to

---

5. Section 552.030.3 provides an exception to the limitations of section 552.020.14, but section 552.030.3 is inapplicable under the facts of this case.

6. The motion court's findings that Dr. English's testimony was wholly proper and required no objections were in error. The motion court's reasoning as to Dr. English's testimony was wrong; however, the motion court correctly concluded that Anderson was not entitled to post-conviction relief based on his trial counsel's failure to object under section 552.020.14.

Dr. English testifying, an issue preserved at trial and through inclusion in the motion for new trial. Further, he asserts that competent appellate counsel would have raised the issue that the trial court plainly erred in allowing Dr. English's testimony given the prohibitions of section 552.020.14.

 Anderson was entitled to effective assistance of his appellate counsel. *Storey v. State*, 175 S.W.3d 116, 148 (Mo. banc 2005). In reviewing whether his appellate counsel was effective, the *Strickland* standard is applied. To prevail on a claim of ineffective assistance of appellate counsel, Anderson must show that his appellate counsel failed to raise a claim of error that a competent and effective lawyer would have recognized and asserted. *Tisius v. State*, 183 S.W.3d 207, 215 (Mo. banc 2006). He must also have shown that "the claimed error [was] sufficiently serious to create a reasonable probability that, if it was raised, the outcome of the appeal would have been different." *Id.* (citing *Smith v. Robbins*, 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000)). Where an alleged error that was not raised was not preserved, the right to relief due to ineffective assistance of appellate counsel tracks the plain error rule and requires that the error not raised be so substantial as to amount to a manifest injustice or a miscarriage of justice. *Middleton v. State*, 80 S.W.3d 799, 808 (Mo. banc 2002).

 Anderson cannot prevail on his claim that his appellate counsel was ineffective for failing to raise an issue of plain error relating to Dr. English's testimony under section 552.020.14. Anderson has not demonstrated that the outcome of his appeal would have been different had this issue been raised in that he cannot show that he would have prevailed under plain error review of this issue. No manifest injustice resulted from Dr. English's testi-

mony. The testimony was not prejudicial to Anderson in that Dr. English made clear that his evaluation did not relate to Anderson's mental state at the time of the crime and he could not rule out that Anderson suffered a mental disease or defect that would manifest itself under severe stress.

 Anderson also cannot show that his appellate counsel was ineffective for failing to raise the preserved issue that the trial court erred in overruling defense counsel's objections to Dr. English's testimony. The trial court, properly exercising its discretion, determined that it would not prevent his testimony because it did not yet know what he would say on the stand. The trial court advised defense counsel to make clear the limitations of Dr. English's testimony during questioning. Anderson cannot show that there was a reasonable probability that the outcome of his appeal would have been different even if his appellate counsel had raised the issue of the trial court permitting Dr. English to testify in rebuttal.

Anderson's claims relating to Dr. English's testimony do not warrant post-conviction relief.

## C. *Brady* Violation

Anderson also alleges that the motion court erred in denying him post-conviction relief because the State failed to satisfy its *Brady* obligations when the prosecutor advised the victims' daughter, Abbey Rainwater, not to authorize release of her psychiatric records.

 Under *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), due process is violated where the prosecutor suppresses evidence favorable to the defendant that is material to either guilt or punishment. Evidence is material only if there is a reasonable prob-

ability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *State v. Shafer*, 969 S.W.2d 719, 741 (Mo. banc 1998).

 The prosecution cannot evade its duty under *Brady* by simply avoiding possession of evidence that *Brady* would require it to disclose. *State v. Robinson*, 835 S.W.2d 303, 306–07 (Mo. banc 1992). In determining if there is a *Brady* violation, this Court examines whether the prosecutor's failings prejudiced the defense, as "[t]he requirements of *Brady* are designed to guarantee a fair trial and to prevent wrongful convictions." *State v. Whitfield*, 837 S.W.2d 503, 508 (Mo. banc 1992) (citing *Brady*, 373 U.S. at 86–88, 83 S.Ct. 1194).

 Anderson argues that the prosecutor's actions caused a *Brady* violation by preventing the defense from obtaining mental health records that documented that Anderson was a source of conflict between Abbey and her parents. Anderson argues that these records would have illuminated how he was impacted by Abbey's overall mental health and would have supported the defense theory that he "snapped" because he was paranoid that the Rainwaters were trying to take his child from him. These arguments are unpersuasive. Anderson fails to demonstrate that Abbey's mental health records were *material* evidence to the issues of his guilt and punishment, and he cannot show that failure to obtain the records prejudiced him. This claim does not merit post-conviction relief.

### D. Failure to Call Dr. Donald Cross

 Anderson further asserts that he is entitled to post-conviction relief because his counsel was ineffective for failing to retain and call Dr. Donald Cross, who would have testified that Anderson suffered post-traumatic stress disorder due to past abuse. Anderson argues that Dr. Cross's testimony would have increased the probability that the jury would have accepted his diminished capacity defense.

 " 'Generally, the selection of witnesses and the introduction of evidence are questions of trial strategy and virtually unchallengeable.' " *Taylor v. State*, 126 S.W.3d 755, 762 (Mo. banc 2004) (quoting *State v. Kenley*, 952 S.W.2d 250, 266 (Mo. banc 1997)). " '[D]efense counsel is not required to shop for an expert witness who might provide more favorable testimony.' " *Id.* (quoting *Kenley*, 952 S.W.2d at 268).

Anderson's defense counsel used the testimony of two expert witnesses, Drs. Lewis and Pincus, to support a diminished capacity defense. Defense counsel was not required to offer Dr. Cross's testimony to support or supplement the theories of Drs. Lewis and Pincus. Counsel was not ineffective for failing to call Dr. Cross to make Anderson's defense "even more compelling." Anderson is not entitled to post-conviction relief on this claim.

### E. Failure to Object to the Prosecutor's Arguments

 Anderson argues that his counsel was ineffective for failing to properly object to and preserve for appellate review the prosecutor's arguments during the guilt phase that (1) but for quick police response, the body count would have been higher and (2) to find Anderson not guilty of first-degree murder required the jury "to believe the hired mercenaries," defense experts Drs. Lewis and Pincus. Anderson asserts that his conviction and sentences would have been reversed on direct appeal if these comments had been objected to and properly preserved and not subject to plain error review.

Anderson previously complained on direct appeal about these comments. This Court noted that they could only be reviewed for plain error and opined: "With respect to [the] claims of error ... for which no objection was offered ... we find no error of law." *Anderson*, 79 S.W.3d at 439. The motion court cited the direct appeal decision in rejecting this Rule 29.15 argument, stating that because this Court had determined that "no error of law" occurred, counsel could not have been ineffective for failing to make a meritless objection.

Anderson, however, argues that the finding on direct appeal was that there was no plain error. He cites *Deck v. State*, 68 S.W.3d 418, 428–29 (Mo. banc 2002), for the proposition that a finding on direct appeal that there was no plain error does not preclude review of the issue in a Rule 29.15 case, because a finding of ineffective assistance of counsel requires a level of prejudice below that required for plain error. The State asserts that this issue is meritless because the holding on direct appeal that there was "no error of law" differs from a finding that there was "no plain error" and, therefore, precludes Rule 29.15 review. In support of this argument, the State cites *Cole v. State*, wherein this Court rejected an argument that counsel was ineffective for failing to object to four statements made by the prosecutor that this Court had determined on direct appeal to be "no error of law." 152 S.W.3d 267, 268–69 (Mo. banc 2004) (citing *State v. Cole*, 71 S.W.3d 163, 169–70 (Mo. banc 2002)). The State also cites *Ringo v. State*, in which this Court rejected a Rule 29.15 claim where on direct appeal this Court had declared the claim was "no[t] error, plain or otherwise." 120 S.W.3d 743, 746 (Mo. banc 2003) (citing *State v. Ringo*, 30 S.W.3d 811, 818 (Mo. banc 2000)).

Unlike the underlying direct appeal decisions in *Cole* and *Ringo*, however, the decision in Anderson's direct appeal details the plain error standard before concluding that there was "no error of law." Under these circumstances, it is less clear that the pronouncement that there was "no error of law" was not equivalent to a statement that there was "no plain error." As such, consideration is given to Anderson's claim regarding his counsel's failure to object to the prosecutor's comments.

■■■ To prevail on this claim, Anderson must show that his counsel's objections would have been upheld if made and that the failure to object resulted in a substantial deprivation of his right to a fair trial. *State v. Clemons*, 946 S.W.2d 206, 228 (Mo. banc 1997). Anderson has failed to meet this burden.

■■■ So long as the prosecutor stays within the record and its reasonable inferences, the argument is proper. *State v. Jones*, 384 S.W.2d 554, 560 (Mo.1964). Counsel is not ineffective for failing to make non-meritorious objections. *Clemons*, 946 S.W.2d at 228. Further, counsel's failure to object during closing argument is generally not error, but is a function of trial strategy. *Id.*

Finally, Anderson has not demonstrated that *Strickland* prejudice resulted from these two comments, nor is he persuasive that he would have prevailed in his direct appeal had his counsel properly objected to and preserved these arguments for review.

Anderson is not entitled to post-conviction relief on this claim.

### III. Claims Relating to the Penalty Phase

Anderson's arguments relating to the penalty phase of his trial are next addressed.

## A. Failure to Strike Juror Dormeyer

Anderson claims that his trial counsel was ineffective for failing to move to strike Juror Dormeyer for cause because of statements he made during *voir dire.* These statements indicated that he would vote for a death sentence unless the defense could convince him otherwise. To determine whether Anderson's attorneys' failure to strike Juror Dormeyer was ineffective assistance of counsel, it is necessary to discuss some of the circumstances surrounding the statements.

Anderson had two attorneys involved in the relevant portion of *voir dire.* Attorney Charles Moreland questioned the panelists, while Attorney Scott McBride communicated the strikes for cause to the trial court. The statements at issue were made while Moreland was questioning panelists about their views on the death penalty. Moreland asked if there was anyone who believed that if a person deliberately takes a life, they must forfeit their own life. Two panelists raised their hands in response to this question. Panelist Sabourin stated unequivocally that he would vote for death in all instances. Panelist Bowers stated she would vote for death "unless there were other factors where it would be life imprisonment." Moreland then explained that the burden of proof would be on the prosecution throughout the trial. He also explained the weighing of aggravating and mitigating circumstances in the penalty phase. He then asked Bowers whether she would be able to give serious consideration to a sentence of life imprisonment without parole if the defense was not able to present any reasons to spare Anderson's life. Bowers responded that she would "probably weigh more heavily to the death penalty." She also stated that she believed in an "eye for an eye" and that when someone is convicted of first degree murder, a life must be given. Pa-

nelist Craft indicated that he shared this view. Thereafter, two other panelists stated that death would be the only appropriate punishment where the murder was carried out in front of children. Panelists Sabourin, Bowers, and Craft were later stricken for cause because they indicated a strong preference for the death penalty.

After questioning the group as a whole, Moreland began asking individual panelists whether they could give serious consideration to a life sentence even if the defense presented no evidence in mitigation. Panelist Williams stated that she could not. At this point, the prosecutor objected, arguing that Moreland's questions were leaving the jury with the impression that Anderson would not produce mitigating evidence when, in fact, he intended to present a mitigation case. The court admonished Moreland to tailor his questions to what he anticipated presenting to the jury and not to give an impression that there would be no mitigation case when he fully expected to develop one. Moreland then asked if Williams would have any difficulty following an instruction to keep the burden with the State at all times. Williams responded that she "would think the mitigating circumstances would have to be provided by the defense." To this, Moreland clarified that the jury could consider *anything* in evidence at trial in mitigation. Williams responded that she could consider a life sentence under those circumstances. McBride also later moved to strike Williams for cause because she indicated a strong preference for the death penalty.

Moreland proceeded to question other panelists individually, asking if they could follow the court's instructions and give serious consideration to a sentence of life in prison without parole. When he questioned Juror Dormeyer, however, the following exchange took place:

[Moreland]: Would you be able to give serious consideration to a sentence of life without parole?

[Dormeyer]: Well, can I ask a question?

[Moreland]: I don't know if I'll be able to answer or not.

[Dormeyer]: Well, if there's no evidence otherwise, I probably—I mean, I believe in capital punishment, but that's not, I have to be really convinced. That's what I'm saying.

[Moreland]: Are you saying you really have to be convinced by the State, or you really have to be convinced by me?

[Dormeyer]: I would have to be convinced that the person was not deserving of capital punishment.

[Moreland]: Okay. So your position in entering—if you're on the jury and entering the penalty phases, the death penalty is automatically an appropriate punishment in your mind, right?

[Dormeyer]: Uh-huh.

[Moreland]: And a life imprisonment could be an appropriate punishment if I can persuade you so?

[Dormeyer]: Right.

[Moreland]: All right. Would you require me to put on evidence to persuade you that life imprisonment would be appropriate in this case before you would give serious consideration to a life sentence?

[Dormeyer]: I believe so.

[Moreland]: Okay. And you understand the burden of proof is on the state?

[Dormeyer]: Yes.

[Moreland]: But you would nonetheless require us to put on, to convince you otherwise?

[Dormeyer]: Right.

[Moreland]: Against the death sentence?

[Dormeyer]: Right.

Unlike Panelists Sabourin, Bowers, Craft, and Williams, McBride did not move to strike Juror Dormeyer despite his statements indicating that he would put the burden on the defense to convince him that Anderson did not deserve the death penalty.

■ A defendant has a right to a fair and impartial jury. U.S. Const. amends. VI, XIV; Mo. Const. art. I, § 18(a). In cases where the death penalty may be imposed, "[a]ny veniremember who cannot be impartial is unfit to serve, whether the partiality is due to an aversion to the death penalty, an excessive zeal for death, or any other improper predisposition." *State v. Clark*, 981 S.W.2d 143, 148 (Mo. banc 1998). Failure to strike a juror that is unfit to serve because of such an improper predisposition is structural error. *See Knese v. State*, 85 S.W.3d 628, 633 (Mo. banc 2002) (citing *Gray v. Mississippi*, 481 U.S. 648, 668, 107 S.Ct. 2045, 95 L.Ed.2d 622 (1987)). A death sentence imposed by a jury tainted with structural error must be vacated. *Gray*, 481 U.S. at 660, 107 S.Ct. 2045.

■ The State argues that the decision not to strike Juror Dormeyer was trial strategy and that any prejudice to Anderson was cured when the defense presented a mitigation case. For trial strategy to be the basis for denying a Rule 29.15 claim, however, the strategy must be reasonable. *Wilkes v. State*, 82 S.W.3d 925, 930 (Mo. banc 2002). Nothing in the record reflects any reasonable basis for trial counsel's decision not to move to strike Juror Dormeyer. Indeed, both Moreland and McBride testified that the oversight occurred because of a note-taking error.[7]

---

7. McBride moved to strike for cause all other

panelists in the group with a similar prefer-

They stated that they could think of no strategic reason for leaving Juror Dormeyer on the jury. Neither can this Court.

No competent defense attorney would intentionally leave someone on the jury who indicated a strong preference for the death penalty and also stated that he would require the defense to convince him that death was not appropriate even though he was aware that the burden of proof remains with the state. Any strategy that would place someone with such a predisposition on the jury is wholly unreasonable.

The State's argument that any prejudice caused by Juror Dormeyer serving on the jury during the sentencing phase was cured when the defense presented its mitigation case is also unpersuasive. The State cites *State v. Hadley*, 815 S.W.2d 422, 424 (Mo. banc 1991), to support this proposition. In that case, one of the jurors indicated in *voir dire* that he would presume guilt unless the defendant testified. 815 S.W.2d at 423. The defendant did take the stand in *Hadley*, and it was held that "[a]ny potential miscarriage of justice in having [the disputed venireperson] on the jury was entirely dependent upon defendant failing to testify." *Id.* at 424.

*Hadley* is distinguishable from the present case. It is true that, prior to questioning Juror Dormeyer, Moreland asked Panelist Williams if she would give serious

consideration to a life sentence if the defense could present no evidence in mitigation. The trial judge sustained an objection to this question because it presented a hypothetical that the defense did not expect to actually occur. This, however, was not the question that was asked of Juror Dormeyer. As set out above, Juror Dormeyer made his statements in response to Moreland asking, "would you be able to give serious consideration to a sentence of life without parole?" He stated that he would "have to be convinced that the person was not deserving of capital punishment." He also indicated that, although he could be persuaded to vote for life, death was automatically an appropriate punishment unless the defense could convince him otherwise. These comments suggest that Juror Dormeyer would not give serious consideration to a sentence of life imprisonment and that he would not employ the proper burden of proof. *See State v. Smith*, 32 S.W.3d 532, 544 (Mo. banc 2000) ("challenge for cause will be sustained if it appears that the venireperson cannot consider the entire range of punishment, apply the proper burden of proof, or otherwise follow the court's instructions in a first degree murder case."). Such a predisposition, which amounts to structural error as noted above, is not cured simply by the defense presenting a mitigation case. As such, *Hadley* is inapplicable.[8]

---

ence for the death penalty. Specifically, he moved to strike Panelist Williams, who, after a follow-up question, indicated that she could follow an instruction to keep the burden with the state at all times and consider evidence in mitigation. No such follow-up question was asked of Juror Dormeyer. Further, while Juror Dormeyer was in Row 6 of the panel, the court moved on to Row 7 before McBride had verified from his notes that he had made all the strikes he needed to make in Row 6. After the court apologized for "jumping the gun," McBride looked at his notes and stated, "I

*think* that is it." (emphasis added). These facts along with the gravity of the error support Anderson's attorneys' assertion that Juror Dormeyer was left on the jury as a result of note-taking error.

8. This determination is limited to the facts of this case. Whether prejudice caused by a panelist that would require the defense to put on some mitigating evidence before considering a life sentence is cured when the defense presents a mitigation case is not a question before this Court.

It is important to note that the structural error in this case could have been easily cured. Anderson's counsel, the prosecutor, or the trial court could have followed up to ask Juror Dormeyer whether, despite his belief that the death penalty was automatically appropriate unless the defense convinced him otherwise, he could put aside his personal beliefs and follow the instructions of the court. Failure to do so denied Anderson his right to a fair and impartial jury and constituted ineffective assistance of counsel. *Knese*, 85 S.W.3d at 632–33.

This error only affected the penalty phase. None of Juror Dormeyer's statements indicated a predisposition to vote for guilt. As such, the motion court's judgment is reversed as to penalty phase only, and the case is remanded. On remand, a properly selected jury may consider again whether death is appropriate for the killing of Debbie Rainwater.

### B. Other Penalty Phase Arguments

Having found that Anderson is entitled to a new penalty phase, there is no need to address his remaining points related to the penalty phase, including that trial counsel was ineffective for failing to call clinical social worker Cessie Alfonso in the penalty phase, that trial counsel was ineffective for failing to properly object to some of the prosecutor's penalty phase arguments, and that Missouri's method of execution is unconstitutional.

Although there is no need to address Anderson's assertions that the State could not seek the death penalty against him because the State's information failed to allege any aggravating factors, this Court reiterates its position that this argument is without merit. Anderson's argument on this issue mirrors the defendant's argument in *State v. Gill*, 167 S.W.3d 184, 193–94 (Mo. banc 2005), wherein it was noted that such claims have been repeatedly rejected.

### IV. Conclusion

Having found no error relating to the guilt phase of Anderson's trial that merits post-conviction relief, the judgment relating to the guilt phase is affirmed. However, because Anderson has demonstrated that his counsel was ineffective in failing to object to Juror Dormeyer serving on the jury, the motion court's judgment as to the penalty phase concerning the killing of Debbie Rainwater is reversed, and the case is remanded. On remand, the death penalty may again be considered by a properly chosen jury.

All concur.