

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FIVE

| | | |
|---|---|---|
| DASHUAN M. WOOTEN, | ) | No. ED110150 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court of |
| | ) | St. Louis County |
| vs. | ) | 19SL-CC03314 |
| | ) | |
| STATE OF MISSOURI, | ) | Honorable David L. Vincent, III |
| | ) | |
| Respondent. | ) | Filed: November 15, 2022 |

Dashaun Wooten (Movant) appeals from the denial of his Rule 29.15[1] motion for post-conviction relief after an evidentiary hearing. Movant was convicted of first-degree assault, armed criminal action, and unlawful possession of a firearm. The trial court sentenced him to three concurrent terms of ten years in the Missouri Department of Corrections. This Court affirmed his convictions and sentences in *State v. Wooten*, 573 S.W.3d 146 (Mo. App. E.D. 2019). We affirm.

---

[1] All rule references are to the Missouri Supreme Court Rules (2018), unless otherwise indicated.

# Background

This case arises out of an incident that occurred on September 8, 2015. Movant's bench trial took place in October 2017 and he was sentenced in December 2017. The facts found by this Court on direct appeal were as follows:

> On September 8, 2015, St. Louis County Police Officer M.W. was dispatched to a location in the municipality of Glasgow Village for a reported shooting. At the scene, the officer spoke with the Victim, who told her that Keland Baker's cousin shot him.[2] With respect to the events leading up to the shooting, Victim told Officer M.W. the following: While he was at the Uptown Market, a small grocery store located near the scene of the shooting, Victim began arguing with Baker, who was with [Movant] at the store. Victim left the store and began to walk away but Baker and [Movant] gave chase. Victim attempted to escape by running to a friend's house nearby where he was shot by [Movant] twice in the right leg. [Movant] fired five shots in all.
>
> On September 10, 2015, while Victim was still hospitalized, he was interviewed separately by Detective T.E. and Detective J.A. Victim told Detective T.E. about his history of conflict with Baker and [Movant], and also described the shooting to the detective. Victim stated that two months before the shooting, he had argued with Baker and had a physical altercation with [Movant]. Victim also told Detective T.E. that on the day of the shooting, he was at Uptown Market when Baker entered the store and they argued again. Victim stated that [Movant] shot him and described [Movant] as a black male, about six feet tall, with short dreadlocks.
>
> Detective J.A. then interviewed Victim. He showed Victim two photograph lineups. From the first lineup, Victim identified Baker, and from the second lineup, Victim identified another individual unrelated to this case. Victim told Detective J.A. that while he recognized those two individuals, neither was involved in the shooting. Detective J.A. showed Victim a recent photograph of [Movant] and, without hesitation according to Detective J.A., Victim identified [Movant] as the shooter.
>
> Several months later, just before the December 2015 preliminary hearing, Victim described the events that led up to the shooting to Assistant Prosecuting Attorney T.R. His description was consistent with his prior statements described above. At the preliminary hearing, Victim identified [Movant] as the shooter. Then, a year and a half later, in May 2017, Victim told Officer B.K. and another assistant prosecuting attorney that [Movant] was the shooter.
>
> But at the October 30, 2017 trial, just five months after Victim had again identified [Movant] as the shooter, Victim testified that he no longer remembered

---

[2] Throughout the trial, Victim and the witnesses consistently referred to Movant as Baker's "cousin" because of their familial relationship.

any of the aforementioned statements identifying [Movant] as the shooter. The State then called as witnesses the four aforementioned police officers and Assistant Prosecuting Attorney T.R. and each testified, over [Movant]'s objections, that Victim identified [Movant] as the shooter. The court found [Movant] guilty on all counts and sentenced him to three concurrent terms of ten years in prison.

*State v. Wooten*, 573 S.W.3d 146, 148-49 (Mo. App. E.D. 2019).

After his convictions and sentences were affirmed on direct appeal, Movant timely filed his pro se motion for post-conviction relief under Rule 29.15. Post-conviction counsel (PCR Counsel) entered on his behalf and the court granted an extension for amending Movant's motion. On July 24, 2020, Movant's untimely motion to vacate, set aside or correct the judgment and sentence was filed. However, after an independent inquiry, the court agreed to treat the motion as if it was timely filed, pursuant to *Sanders v. State*, 807 S.W.2d 493 (Mo. banc 1991). Movant's claims included that his trial counsel (Trial Counsel) was ineffective for failing to investigate and call his mother as an alibi witness, and that his appellate counsel (Appellate Counsel) was ineffective for failing to raise a spoliation claim on appeal.

The trial court held an evidentiary hearing on March 29, 2021, in which Trial Counsel and Appellate Counsel both testified. Movant and Mother testified as well.

*Movant's evidentiary hearing testimony*

At the evidentiary hearing, Movant testified that Trial Counsel did not present any witnesses on his behalf, although Movant sent him a letter requesting he contact his mother, Kayla Wooten (Mother), to testify on his behalf and provided her contact information. Movant claimed Mother would testify that he was with her and his son the whole weekend. On the night in question, Movant said he was at his mother's house with his four brothers and she was in the kitchen cooking when Keland Baker appeared sometime between 11 p.m. and midnight. Baker was sweating and asked Movant a bunch of questions about when he first got "locked up" and

3

how to see if a person had warrants.  However, the court noted Movant's motion stated that he just got out of jail and was going to his mother's house.  Movant answered that the timing was a "whole mixup" and his release was "way in July," but the incident at issue occurred in September.  Trial Counsel told Movant his Mother would not be a credible witness because she was family.  When specifically asked about his testimony during the trial court's Rule 29.07 post-trial examination that he did not want family called as witnesses, Movant claimed he lied because Trial Counsel told him family could not be called.

Movant further testified that he insisted on a bench trial even though the judge was reluctant to do so because his attorney told him a racist white jury might convict him because he is black.  He said Trial Counsel tried to force him to plead guilty and take a seven-year sentence.  Movant recalled that he answered the court's questions during the post-trial 29.07 examination by indicating Trial Counsel did a good job for him, but he was afraid to say anything bad about his attorney because he knew the attorney had to file his notice of appeal.  Movant agreed Trial Counsel deposed the victim at Movant's request, and that was when the victim decided he did not remember who shot him anymore.

*Trial Counsel's evidentiary hearing testimony*

Trial Counsel testified at the evidentiary hearing that Movant wished to have a bench trial.  He said the trial defense was that Victim could not be trusted on his earlier statements to investigators accusing Movant, and that Victim now did not know who shot him.  When asked about Movant's Mother as a witness, Trial Counsel answered that they discussed calling her, but Trial Counsel thought it was best to rely on Victim's testimony when they were preparing for a jury trial.  "When it changed to a bench trial, I may have -- I would have made a different decision," he added, but that changed "late in the game."

4

Trial Counsel said he thought calling Mother was a bad idea because he did not think the jury would find her credible, but that Movant was trying to hide behind something, as opposed to focusing on Victim's credibility. However, when Movant's case became a bench trial, he said, "I think the biggest mistake I made was not pivoting at that point." However, he still had concerns about her credibility because one of the previous attorneys representing Movant made a note in the file that she spoke with Mother, who thought Movant may have been at her house until 9:30 p.m., but she needed to check her calendar; however, Mother never followed up. Trial Counsel's case log included a note that he contacted Mother and there were impeachment concerns based on her being Movant's mother, and that she had to check her calendar before she could ascertain Movant was with her, which she never confirmed.

Trial Counsel was questioned about his motion for sanctions for discovery violations against the State, which he explained he learned about during trial. He said the State's attorney and investigator visited Victim in the county jail and the investigator's notes, which included inculpatory evidence to use at trial, had been destroyed. The trial court denied Trial Counsel's motion for sanctions.

*Mother's evidentiary hearing testimony*

Mother testified that on September 8, 2015, she was at home with Movant and her four other sons. She said Movant did not leave that day. She claimed she was happy for Movant and his son because it was the day he got out of jail, or somewhere around that time, which Movant testified was actually in July. She specifically said it was Labor Day; however when the court questioned her about whether it was a Monday or Labor Day, she answered, "Should I have said around Labor Day?" Mother said she was not contacted by Trial Counsel about testifying at Movant's trial, but she would have been willing to testify had she been asked. She did not recall

5

a conversation with the prior attorney who noted that she needed to check her calendar to verify Movant's alibi. Mother said she did not keep a calendar and could not go back to check if Movant was home with her that day.

On the day of the shooting, she testified she stayed in the same room with Movant day and night. She first claimed she did not sleep in the same room as Movant, but then contradicted herself and said Movant slept in the living room with her. Her other sons were home, too, but Mother refused to give their names because they had nothing to do with it. She testified she never said Movant left around 9:30 as stated in the defense file, and that no one else came to the house that night. She said maybe she fell asleep but she did not see Keland Baker. When questioned about Movant's testimony, she said she does not cook at midnight as Movant testified.

*Appellate Counsel's evidentiary hearing testimony*

Appellate Counsel also testified at the evidentiary hearing that the only claim raised on appeal regarded Victim's prior inconsistent statements. She explained there are not as many possible errors to raise on appeal after bench trials, and there is a presumption that the trial judge is aware of the law and can disregard things like hearsay, but she reviewed the transcript and all the case documents to try to think about what issues she could prove on appeal. Appellate Counsel acknowledged she discovered the issue with the investigator's notes, and that Trial Counsel asked for sanctions, which "had some elements where it was good as far as raising it, but ultimately, [] decided not to." She added the notes' contents were a mystery and there was not enough on the record to raise the issue. She needed much more on the record to establish bad faith. She also explained that the issue was more about destruction of evidence rather than a discovery violation, so it was not exactly raised in proper form at trial. Based on her 19 years of

6

experience as an appellate attorney, Appellate Counsel made a judgment call not to raise the claim.

*Motion court ruling and post-conviction relief appeal*

After the evidentiary hearing, on October 12, 2021, motion court issued its findings of fact and conclusions of law denying Movant's motion for post-conviction relief. The court held Movant's claim that Trial Counsel was ineffective for failing to investigate and call his mother as an alibi witness was refuted by the record in that he stated under oath he did not want his family called as witnesses because family would testify the same way "regardless if I did or didn't do it." The motion court further held that even if the claim was not refuted by the record, the decision was a matter of sound trial strategy and did not fall below the standard of reasonably competent counsel because counsel was reasonably concerned about both Mother's inherent bias and the fact that she made a statement saying she would have to check her calendar to confirm Movant's whereabouts, yet she testified at the hearing that she did not keep a calendar. The motion court further held Movant failed to meet his burden to prove prejudice because Mother's testimony would not have provided a viable alibi defense.

As to Movant's second point, the motion court held that Appellate Counsel was not ineffective for failing to brief a spoliation claim because the missing notes were inculpatory rather than exculpatory, counsel reasonably thought there was an insufficient record to support the claim and to establish bad faith, and the statement made by the victim (which identified Movant as the shooter) was "already known to" defense "and had been repeated by several other witnesses in the trial." Even if Appellate Counsel had asserted the claim on appeal, it is not likely the claim would have been the basis for reversing the judgment, so Movant was not prejudiced by counsel's omission.

This appeal follows.

**Discussion**

Movant raises two points on appeal, both claiming the motion court clearly erred in denying his Rule 29.15 amended motion for post-conviction relief. First, he claims that Trial Counsel was ineffective for failing to investigate Movant's Mother as an alibi witness and present the alibi at trial. In his second point, Movant argues the motion court clearly erred because Appellate Counsel was ineffective for failing to raise a claim that the trial court plainly erred in denying sanctions for prosecutorial destruction of evidence on direct appeal.

*Standard of Review*

"Review of denial of relief under Rule 29.15 is limited to determining whether the motion court's findings and conclusions are clearly erroneous." *Anderson v. State*, 196 S.W.3d 28, 33 (Mo. banc 2006). "The motion court's findings are presumed correct." *Id.* The findings and conclusions of a motion court are clearly erroneous "only if, after a review of the entire record, the reviewing court is left with the definite and firm impression that a mistake has been made." *Rotellini v. State*, 77 S.W.3d 632, 634 (Mo. App. E.D. 2002).

To prevail on a claim of ineffective assistance of trial counsel, a defendant in a criminal case must show (1) that trial counsel failed to exercise the customary skill and diligence of a reasonably competent attorney, and (2) that he was prejudiced in that a different outcome would have resulted but for trial counsel's failure. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987). To establish trial counsel's performance did not meet the standard of a reasonably competent attorney, a movant must overcome the presumptions that any challenged action was sound trial strategy, counsel rendered

8

adequate assistance, and that counsel "made all significant decisions in the exercise of professional judgment. *Aaron v. State*, 81 S.W.3d 682, 686 (Mo. App. W.D. 2002) (citations omitted). "Reasonable choices of trial strategy, no matter how ill-fated they appear in hindsight, cannot serve as a basis for a claim of ineffective assistance." *Anderson*, 196 S.W.3d at 33.

The standard for proving ineffective assistance of appellate counsel is a high one. *Bryan v. State*, 134 S.W.3d 795, 800 (Mo. App. S.D. 2004). We analyze decisions of appellate counsel in essentially the same way as trial counsel. *Weinert v. State*, 593 S.W.3d 666, 670 (Mo. App. E.D. 2020). "There is a strong presumption counsel's conduct was reasonable and effective." *Id.* "On appeal as well as at trial, the choice of one reasonable strategy over another is not ineffective assistance." *Id.* at 671. Counsel has no duty to raise every possible preserved issue on appeal. *Id.* "Appellate counsel is granted considerable professional leeway in deciding which issues to raise on appeal." *McAllister v. State*, 643 S.W.3 124, 131 (Mo. App. E.D. 2022). Further, "strong grounds must exist showing that appellate counsel failed to assert a claim of error that would have required reversal had it been asserted and that was so obvious from the record that a competent and effective lawyer would have recognized it and asserted it." *Bryan*, 134 S.W.3d at 800.

*Analysis*

**Point I**

First, Movant claims the motion court erred in denying his post-conviction relief motion that Trial Counsel was ineffective in failing to investigate Mother as an alibi witness and present the alibi at trial because the decision not to thoroughly investigate his alibi was unreasonable under the circumstances of this case and not supported by trial strategy. Movant argues that, but for Trial Counsel's conduct, which undermined his trust in his counsel, there is a reasonable probability that Movant would not have been found guilty.

9

"Ordinarily, the choice of witnesses is a matter of trial strategy and will support no claim of ineffective assistance of counsel." *Barton v. State*, 432 S.W.3d 741, 750 (Mo. 2014) (citing *State v. Harris*, 870 S.W.2d 798, 816 (Mo. banc 1994)). To succeed on a claim of ineffective assistance of counsel for failure to call a witness, a movant must show that, (1) counsel knew of should have known about the existence of the witness; (2) the witness could have been located through a reasonable investigation; (3) the witness would have testified at trial; and (4) the witness's testimony would have provided movant with a viable defense. *McIntosh v. State*, 413 S.W.3d 320, 328 (Mo. banc 2013).

The motion court held Movant's allegation was refuted by the record, citing Movant's sworn testimony at the post-trial Rule 29.07 hearing immediately following the trial verdict, when he testified that he spoke with Trial Counsel about calling witnesses, but he believed that family would not be found credible. However, at the evidentiary hearing, more than three years later, Movant explained that he lied in the post-trial Rule 29.07 hearing and he wanted Mother to be called. But as the court found, the testimony of Movant and Mother at the evidentiary hearing demonstrated that Mother's testimony would not provide a viable defense based on her inconsistencies and lack of credibility, even if Trial Counsel had not known this was the case when making the decision not to call Mother.

Trial Counsel's testimony demonstrated that Mother's alibi had been investigated. The previous defense counsel's file indicated Mother could not provide an alibi because she had to check her calendar – that she testified she did not keep – and Movant may have left her house at 9:30 that night. Indeed, Trial Counsel's testimony proved he had a strategy for focusing on Victim's credibility rather than adding Mother as an alibi witness when he was preparing for a jury trial. His "admission" that he made a mistake by failing to pivot his strategy when the court

10

granted a bench trial does not demonstrate that a reasonably competent attorney in the same situation would have made a different decision in the exercise of reasonable professional judgment. The motion court's findings included that Movant requested a bench trial which was granted on October 26, 2017, just four days before trial. This further bolsters Trial Counsel's continuation with the same competent strategy. Moreover, a list of inconsistencies in Mother's testimony shows Trial Counsel had a valid concern that Mother would be subject to cross-examination and impeachment at trial, whether before a jury or judge.

Finally, the motion court additionally held that the decision to call an alibi witness is a matter of trial strategy that did not fall below the standard of reasonably competent counsel and Movant did not suffer prejudice because the witness's proposed testimony would not have provided a viable defense.

The test for ineffective assistance of counsel requires a finding of both (1) that the trial counsel failed to exercise the customary skill and diligence of a reasonably competent attorney, and (2) that movant was prejudiced in that a different outcome would have resulted but for trial counsel's failure. *Strickland*, 466 U.S. at 687. We find neither prong is met here. The motion court did not clearly err in denying relief on Movant's claim that his Trial Counsel was ineffective for failing to call Mother to provide an alleged alibi because Mother's testimony did not unqualifiedly support Movant and provide a viable defense. Movant's first point is denied.

## **Point II**

In his second point, Movant alleges the motion court erred in denying his post-conviction relief motion that Appellate Counsel was ineffective for failing to raise that the trial court plainly erred in denying sanctions for prosecutorial destruction of evidence on his direct appeal. Movant argues this error violated his rights to due process of law, effective assistance of counsel, and a

11

fair trial, under the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution, and Article I, Sections 10 and 18(a) to the Missouri Constitution. Movant argues substantial evidence supported an allegation that the court plainly erred in denying sanctions for prosecutorial destruction of evidence. He further claims there is a reasonable probability that, had Appellate Counsel raised the issue, the outcome of his appeal would have been different.

The motion court found the investigator at trial testified he had taken notes during a three-minute conversation between the State and Victim. Victim again identified Movant as the shooter. The investigator said he never gave the notes to the prosecutor because she did not need them, and he destroyed the notes approximately two weeks before trial.

An attorney will not be found ineffective for failure to raise unpreserved error on appeal. *Holman v. State*, 88 S.W.3d 105, 110 (Mo. App. E.D. 2002). Although Movant argues about destruction of evidence, or spoliation, in this post-conviction relief motion, Trial Counsel argued during trial for sanctions on the grounds that there had been a discovery violation, or a *Brady* violation.[3] Thus, the issue is not preserved and we will not hold Appellate Counsel ineffective for failing to raise this claim on appeal.

However, we note the record demonstrates that Appellate Counsel strategically considered the issue before deciding to exclude it from Movant's appeal, and her strategy is virtually unchallengeable. Appellate Counsel testified during the evidentiary hearing that based on her 19 years of appellate practice and work on nearly 1,000 appeals, she made the judgment call not to raise the claim. She thought the record did not contain enough to establish the bad faith element of a spoliation claim, based on her experience with this issue in other cases.

_____

[3] *Brady v. Maryland*, 373 U.S. 83, 87 (1963), held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

Clearly, Appellate Counsel made a strategic decision to raise the claim about Victim's prior inconsistent statements rather than raise the additional claim regarding the investigator's destruction of notes.

Regardless of the merits of a spoliation claim or discovery violation, Movant has not overcome the presumption that Appellate Counsel's decision not to raise a claim on appeal that the trial court erred in denying sanctions for prosecutorial destruction of evidence was a sound strategy on appeal. Moreover, Movant cannot demonstrate the claim had such merit it would have required reversal had it been asserted and was so obvious from the record that a competent and effective lawyer would have recognized it and asserted it. *Bryan*, 134 S.W.3d at 800. Point II is denied.

### Conclusion

The motion court's judgment is affirmed.

_____
Lisa P. Page, Judge


Michael E. Gardner, C.J. and
Angela T. Quigless, J., concur.