

# In the Missouri Court of Appeals
# Eastern District

### DIVISION FIVE

| | | |
|---|---|---|
| FORREST D. RUSSELL, | ) | No. ED112090 |
| | ) | |
| Appellant, | ) | Appeal from St. Louis County |
| | ) | Circuit Court |
| | ) | |
| vs. | ) | Cause No. 18SL-CC04792 |
| | ) | |
| STATE OF MISSOURI, | ) | Honorable Nancy W. McLaughlin |
| | ) | |
| Respondent. | ) | FILED:  August 27, 2024 |

Opinion

Forrest D. Russell (Movant) appeals from the motion court's judgment denying his Rule 29.15[1] amended motion for post-conviction relief from his jury convictions on first-degree robbery, first-degree burglary, first-degree kidnapping, unlawful possession of a firearm, and associated counts of armed criminal action.  In his sole point on appeal, Movant argues the motion court clearly erred because Trial Counsel was ineffective in failing to adduce evidence of an alternate perpetrator (J.H.[2]) at trial.  Because Trial Counsel performed effectively by employing a reasonable trial strategy in choosing not to present evidence of a specific alternate perpetrator, instead electing to proceed on an equally reasonable theory of mistaken identity, the

---

[1] All Rule references are to Mo. R. Civ. P. (2023), unless otherwise indicated.
[2] The personal identifying information of non-party witnesses has been omitted pursuant to § 509.520, RSMo. (Cum. Supp. 2023).

motion court did not clearly err in denying post-conviction relief. Accordingly, we affirm the motion court's judgment.

## Background

The State charged Movant with first-degree burglary, kidnapping, unlawful possession of a firearm, first-degree robbery, and three counts of armed criminal action. Movant's charges were tried by a jury in May of 2017.

### *Movant's Trial*

Viewed in the light most favorable to the judgment,[3] the following evidence was adduced at trial: On December 20, 2014, Victim was awakened in her bedroom by a man, whom she later identified as Movant, standing over her bed with a gun. Upon first seeing the intruder, she described him as "a black silhouette." Movant ordered Victim to "do as I say, I have a gun." Victim saw a gun in Movant's hand and a flashlight that he held alternatingly in his mouth and hands. Victim testified that Movant was wearing dark clothes and dark gloves. Movant asked Victim whether she had money or medication in the house. He then hog-tied her with her belt and socks and wrapped her hands with duct tape. Victim estimated that Movant was in her room for approximately thirty to forty-five minutes. He then left the bedroom and continued rummaging through the house.

Victim managed to partially free herself from her bindings and flee the house through her garage, escaping to a neighbor's house to seek help. While exiting the garage, she noticed a large truck parked in her driveway.

At trial, Victim positively identified Movant as the man that had burglarized her home and robbed her. Victim testified that she was five-feet, two inches tall and recalled Movant was

---

[3] *Shockley v. State*, 579 S.W.3d 881, 892 (Mo. banc 2019) (internal quotation omitted).

a little taller than her. On cross-examination, Victim denied that she ever described Movant as being six-feet tall or that she knew Movant's age.

At trial, numerous witnesses testified as to Victim's condition and statements after the offense. Victim's Neighbor testified that Victim frantically rang the doorbell between 9 pm and 10 pm. After helping her remove her bindings, Neighbor called police. Two police officers testified to their conversations with Victim shortly after contacting her at Neighbor's home. Officer One recalled that Victim was extremely frightened when speaking with him and that she had urinated on herself. Victim and Officer One went to Victim's house, where Officer One noticed a truck that appeared to be stuck off the side of the roadway; said truck was later found to have belonged to Movant. When Victim and Officer One walked into the garage, there was a gun lying on the ground that did not belong to the Victim.

On cross-examination, Officer One testified that when he first encountered Victim at Neighbor's house, she could not provide an age for the assailant. When Officer One prompted her to give a *possible* age range, Victim stated the assailant was possibly between twenty and thirty years old. Officer Two testified that Victim had reported that the perpetrator was "close to six[-]feet tall, but that Victim "wasn't very accurate [because] she was kind of upset." Officer Two testified that when he prepared a photo lineup to show to Victim, she immediately identified Movant as her assailant. Victim testified that Movant's hair looked blond to her during the incident, but when she recognized Movant in the photo lineup, she realized his hair was gray and had only appeared blond due to the glare from the flashlight.

Movant testified in his defense and gave the following alibi testimony: On the day of the offense, Movant spent time with three acquaintances: J.H., a second man, and a woman. Movant and the second man drove together in Movant's truck, while J.H. and the woman followed in an

3

SUV. Movant ingested multiple drugs while in the truck with the second man. Arriving at their destination, Movant became ill, got out of the truck, and lay on the ground next to a tree at a local park. J.H. and the second man drove away in Movant's truck, while the woman drove away in the SUV. Movant laid alone in the park for hours, until his acquittances returned sometime in the early morning hours. They put him in a bag, dragged him into the woods, and left him there. Movant testified when he regained consciousness, he asked to borrow a phone from a passerby. He tried to call his father, but was unable to speak with him due to poor reception. Movant began walking towards a QuikTrip to use a phone there. He was unable to reach his destination, as he walked to a valley, fell off a cliff, and landed on a hillside where he was eventually found by police.

The evidence at trial showed that, at the time of the offense, Movant had black hair with some gray in it, was approximately five-and-a-half feet tall, and was forty-four years old. Movant denied being the assailant in Victim's home. Movant suggested that J.H. matched Victim's description of the perpetrator and had been the last one to use his truck.

At the close of trial, the jury convicted Movant on all counts. The trial court sentenced Movant as a prior and persistent offender to an aggregate total of thirty years in the Missouri Department of Corrections. Movant directly appealed his convictions and sentences, which this Court affirmed in *State v. Russell*, 553 S.W.3d 889, 890 (Mo. App. E.D. 2018) (per curiam).

*Post-Conviction Proceedings*

Movant timely filed his pro se and amended motions for postconviction relief pursuant to Rule 29.15, and the motion court granted an evidentiary hearing. Movant raised the same claim as he does here. At the evidentiary hearing, Movant admitted that Victim was in the best

4

position to be able to identify her assailant. Trial Counsel's Investigator testified that J.H. was five feet, nine inches and had dark brown hair.

Trial Counsel testified that his trial strategy was to argue that this was a case of mistaken identity and that Movant was not involved in the offense. Trial Counsel stated he cross-examined Victim and responding police officers about Victim's description of the assailant because the description did not match Movant's physical characteristics. Trial Counsel decided not to investigate the three acquittances—including J.H., whom Movant indicated could be the perpetrator—because he was concerned they would rebut Movant's version of events. Trial Counsel was also concerned that if he showed Victim a picture of J.H., Victim might have still insisted that Movant was her assailant, thereby undermining his mistaken-identity defense. Trial Counsel stated that when employing a mistaken-identity defense, his strategy generally is to suggest to the jury that "somebody else may have done [the crime], [but] not to say necessarily that [a] particular person did it, but to say [Movant] did not."

*Motion Court's Judgment*

On September 12, 2023, the motion court issued its judgment denying Movant's amended motion for postconviction relief. The motion court found Trial Counsel did not perform ineffectively by failing to adduce evidence of J.H. as a specific alternate perpetrator, because general mistaken identity was an equally reasonable trial strategy. Second, the motion court found Movant was not prejudiced, as Movant failed to show that the evidence of J.H. as an alternate perpetrator would have been admissible nor changed the outcome of the trial. Movant now appeals.

Standard of Review

We review a motion court's denial of post-conviction relief for whether the motion court's findings of fact and conclusions of law were clearly erroneous. Rule 29.15(k). "A judgment is clearly erroneous when, in light of the entire record, the court is left with the definite and firm impression that a mistake has been made." *Shockley v. State*, 579 S.W.3d 881, 892 (Mo. banc 2019) (internal quotation omitted). We presume the motion court's findings of fact are correct. *Id.* (internal citation omitted).

## Discussion

### I. *Strickland*[4] standard for post-conviction relief

To prevail on a motion for post-conviction relief, a movant must satisfy the two-prong test for ineffective assistance of counsel outlined in *Strickland v. Washington*, 466 U.S. 668 (1984). The two prongs, which must be proven by a preponderance of the evidence, are as follows: (1) trial counsel performed ineffectively by failing "to exercise the level of skill and diligence reasonably competent trial counsel would in a similar situation" and (2) trial counsel's ineffective performance prejudiced the outcome of his trial. *Shockley*, 579 S.W.3d at 892 (quoting *Strickland*, 466 U.S. at 687). If a movant fails to meet one prong, then we need not consider the other. *Hendricks v. State*, 519 S.W.3d 510, 514 (Mo. App. E.D. 2017) (internal citation omitted).

To satisfy the performance prong, a movant "must overcome the strong presumption [T]rial [C]ounsel's conduct was reasonable and effective" by identifying "specific acts or omissions . . . that, in light of all the circumstances, fell outside the wide range of professional competent assistance." *Shockley*, 579 S.W.3d at 892 (internal quotations omitted). "[S]trategic

---

[4] *Strickland v. Washington*, 466 U.S. 668 (1984),

choices made after a thorough investigation of the law and the facts relevant to plausible opinions are virtually unchallengeable[.]" *Id.* (quoting *Dorsey v. State*, 448 S.W.3d 276, 287 (Mo. banc 2014)). To satisfy the prejudice prong, a movant must show "there is a reasonable probability that, but for [Trial] [C]ounsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (internal quotation omitted). Reasonable probability is probability sufficient to undermine confidence in the trial's outcome. *Deck v. State*, 381 S.W.3d 339, 343 (Mo. banc 2012).

## II. Trial Counsel's performance was not ineffective as defense of mistaken identity is a reasonable trial strategy

Ultimately, we find that Trial Counsel's decision to present a defense of mistaken identity was reasonable strategy. *See Shockley*, 579 S.W.3d at 892. A trial counsel will not be held to have performed ineffectively by declining to adduce inadmissible evidence of a specific alternative perpetrator. *Polk v. State,* 539 S.W.3d 808, 821 (Mo. App. W.D. 2017). Even if the alternate-perpetrator evidence were admissible, it may have undermined rather than aided Movant's defense.

### A. Movant's proposed evidence of an alternative perpetrator would not have been admissible

To establish an ineffective assistance of counsel claim based on failure to adduce evidence of an alternate perpetrator, a movant must demonstrate such evidence would have been admissible. *Id.* at 822 (quoting *Barnes v. State*, 334 S.W.3d 717, 722 (Mo. App. E.D. 2011)). Typically, evidence of a specific alternative perpetrator is only admissible if such evidence includes proof that the alternative perpetrator committed an act directly connecting that individual with the crime. *Id.* at 821 (quoting *State v. Nash*, 339 S.W.3d 500, 513 (Mo. banc 2011)); *see also State v. Shegog*, 521 S.W.3d 628, 636 (Mo. App. W.D. 2017). On the contrary, "[a]lternate perpetrator evidence is ***not*** admissible '[w]hen the evidence is merely that another

7

person had opportunity or motive to commit the offense.'" *Polk*, 539 S.W.3d at 821 (quoting *State v. Bowman*, 337 S.W.3d 679, 686 (Mo. banc 2011)) (emphasis added). Rather, the evidence must "clearly point out someone besides [the] accused as the guilty person." *State v. McKay*, 459 S.W.3d 450, 458 (Mo. App. E.D. 2014); *see also State v. Bowens*, 550 S.W.3d 84, 99 (Mo. App. E.D. 2018) (excluding proposed alternative-perpetrator evidence of a news article about crimes committed by an individual wearing the same sports hat as the defendant where nothing else connected that individual to the charged offense).

Here, Movant argues Trial Counsel should have further investigated and presented evidence to the jury that J.H. committed the charged offenses rather than Movant. For instance, Movant asserts Trial Counsel should have presented J.H.'s photograph to Victim. Movant also relies on his alibi testimony to show that J.H. had access to his truck, which was found at Victim's house. Absent something more linking J.H. to the offense, any purported evidence of J.H. as an alternative perpetrator would likely have been inadmissible, as Movant could not establish a clear link between J.H. and a key piece of evidence involved in the offense. *See Polk*, 539 S.W.3d at 821 (citing *Nash*, 339 S.W.3d at 513); s*ee also Bowens*, 550 S.W.3d at 99; *McKay*, 459 S.W.3d at 458. While Movant's alibi, if believed by the jury, suggests J.H. may have had the ***opportunity*** to commit the offense, mere opportunity is insufficient to introduce evidence of J.H. as an alternative perpetrator. *See id.* (citing *Bowman*, 337 S.W.3d at 686). It was Movant's truck that was found near the scene of the crime, and it was Movant whom Victim immediately identified in a photo lineup. Although Movant strenuously argues on appeal that Victim's description of the assailant precisely matches J.H., the record refutes his claim. At trial, Victim denied knowing the perpetrator's exact age or ever describing him as six-feet tall, and she explained how the flashlight made the perpetrator's grey hair look blond. The jury was free to

believe or disbelieve any portion of Victim's and Movant's testimonies, just as the motion court was free to believe or disbelieve any testimony at the evidentiary hearing. *See Shockley*, 579 S.W.3d at 911. Moreover, as Trial Counsel's Investigator testified at the hearing, J.H.'s actual description, although not matching Movant's, also didn't match the alleged description that Victim gave the police. Under these circumstances, Movant's allegation that J.H. committed the offenses is no more than a bare suspicion and identifies no act directly connecting J.H. to the offense. *See Polk*, 539 S.W.3d at 821 (quoting *Nash*, 339 S.W.3d at 513); s*ee also Bowens*, 550 S.W.3d at 99; *McKay*, 459 S.W.3d at 458. Accordingly, the motion court did not err in declining to find Trial Counsel performed ineffectively for refusing to attempt to introduce inadmissible evidence. *See Polk*, 539 S.W.3d at 821.

B.    Trial Counsel's defense theory of mistaken identity was equally reasonable and did not deprive Movant of the opportunity to present his alibi defense

"Reasonable choices of trial strategy, no matter how ill-fated they appear in hindsight, cannot serve as a basis for a claim of ineffective assistance." *Barton v. State*, 432 S.W.3d 741, 749 (Mo. banc 2014) (quoting *Anderson v. State*, 196 S.W.3d 28, 33 (Mo. banc 2006)). "It is not ineffective assistance of counsel to pursue one reasonable trial strategy to the exclusion of another reasonable trial strategy." *Id.* (quoting *Anderson*, 196 S.W.3d at 33).

Even assuming that evidence relating to J.H. as an alternative perpetrator would have been admissible, Trial Counsel pursued an equally reasonable trial strategy in presenting a defense of mistaken identity rather than focusing solely on a theory of a specific alternate perpetrator. *See id.* (citing *Anderson*, 196 S.W.3d at 33). Under this equally reasonable defense theory, Trial Counsel presented Movant's alibi testimony to the jury and generally alluded to the existence of an alternative perpetrator. Trial Counsel argued that Movant was not the individual who broke into Victim's home, tied her up, and robbed her. On direct examination of Movant,

9

Trial Counsel effectively adduced testimony that Movant did not match Victim's initial report that her assailant was between twenty and thirty years old and six-feet tall. Moreover, on direct examination, Movant named J.H. as a possible perpetrator and described what he believed to be J.H.'s height, age, and hair color. Consequently, Trial Counsel effectively represented Movant at trial by presenting argument and evidence in favor of a mistaken-identity defense that included making the jury aware of a potential alternate perpetrator theory. *See id.* (citing *Anderson*, 196 S.W.3d at 33).

Further, Trial Counsel testified it was just as likely that showing J.H.'s photograph to Victim could have weakened Movant's defense had Victim denied that J.H. resembled her assailant or had the jury believed Victim's description of Movant was a closer match to the physical appearance of Movant than to J.H. Such considerations constituted reasonable strategy of Trial Counsel, as counsel will not be found ineffective for failing to put on evidence that does not unequivocally support the movant's defense. *See Shockley*, 579 S.W.3d at 910 (internal quotation omitted); *Barton*, 432 S.W.3d at 741 (citing *Anderson*, 196 S.W.3d at 33).

For the aforementioned reasons, the motion court found that Trial Counsel's performance was not ineffective. *See Shockley*, 579 S.W.3d at 892 (quoting *Strickland*, 466 U.S. at 687). We agree. Because Movant did not meet his burden to show Trial Counsel performed ineffectively, we need not analyze the prejudice prong of *Strickland*. *See Hendricks*, 519 S.W.3d at 514 (internal citation omitted). The motion court did not err in denying Movant's amended motion for post-conviction relief. *See* Rule 29.15(k). The point on appeal is denied.

## Conclusion

The judgment of the motion court is affirmed.

_____
Rebeca Navarro-McKelvey, J.

Thomas C. Clark II, C.J., and
Charles H. McKenzie, Sp.J., concur.

11