

# Missouri Court of Appeals
## Southern District

### In Division

TERRY D. MORRISON,      )
          )
      Movant-Appellant,      )
          )
      v.          )      No. SD38438
          )
STATE OF MISSOURI,      )      **Filed:  November 27, 2024**
          )
      Respondent-Respondent.      )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

The Honorable Thomas Mountjoy, Senior Judge

### <u>AFFIRMED</u>

Terry D. Morrison ("Morrison") appeals the judgment of the Circuit Court of Greene County ("motion court") denying his amended Rule 29.15 motion for post-conviction relief following an evidentiary hearing.  In his underlying criminal case, a jury found Morrison guilty of murder in the second degree and armed criminal action and he was sentenced to life imprisonment for murder in the second degree and 100 years' imprisonment for armed criminal action, each sentence to be served consecutively to the other.  *See* sections 565.021 and 571.015.[1]  We affirmed the trial court's judgment on

---

[1] All references to statutes are to RSMo 2000, and all rule references are to Missouri Court Rules (2024), unless otherwise indicated.

1

direct appeal by summary order filed June 21, 2019, and issued our mandate on July 9, 2019, in *State v. Morrison*, SD35581.  In this post-conviction appeal, Morrison claims he received ineffective assistance of counsel from his trial counsel.[2]  Finding no clear error in the motion court's findings and conclusions, we affirm the motion court's judgment.

## Factual Background and Procedural History

Morrison was originally charged in the underlying criminal case with murder in the first degree and armed criminal action for the death of P.T. ("Victim").  *See* sections 565.020 and 571.015.  The evidence at trial, viewed in the light most favorable to the jury's verdict, was as follows:[3]

On September 21, 2011, Springfield police officers were performing surveillance on a home at the corner of Main and West Mount Vernon in Springfield when they observed a man, V.S., hand drugs to a woman, Mrs. B.  The woman got into a small black truck and left the home.  Springfield police officers who were in the area, Officers Boehmer and Karnes, performed a traffic stop on the truck.  Officer Boehmer saw there were three people in the truck when he approached, and the woman seated in the middle was Victim.  Officers searched the truck and located drugs.  Victim spoke to and cooperated with the police officers.  They issued her a summons, and they released her.  The officers went back to the home and arrested V.S. for distribution of a controlled substance.

---

[2] We have independently verified the timeliness of Morrison's *pro se* and amended Rule 29.15 post-conviction motions.  *Moore v. State*, 458 S.W.3d 822, 825-26 (Mo. banc 2015).

[3] "When reviewing the denial of post-conviction relief, we interpret the facts 'in the light most favorable to the verdict.'"  *McConnell v. State*, 688 S.W.3d 666, 673 (Mo. App. S.D. 2024) (quoting *Davis v. State*, 653 S.W.3d 169, 171 (Mo. App. S.D. 2022)).

Two days later, on September 23, 2011, Victim was staying in Room 212 at the Homestay Inn with another woman, C.C. Both Victim and C.C. were prostitutes and exchanged sex for money. Around 11:00 p.m., a white four-door Oldsmobile belonging to V.S. pulled into the Homestay Inn parking lot. V.S. was driving the Oldsmobile, Morrison was in the front passenger seat of the vehicle, and two other men, K.L. and D.D., were in the backseat of the vehicle. V.S. parked the Oldsmobile near the building and a curb, at the edge of the side of the Homestay Inn. D.D. allowed Morrison to use D.D.'s phone because Morrison did not have his phone with him. Morrison made a call on the phone and said, "Hey, I'm here." Morrison then got out of the vehicle and walked up the stairs to the second floor of the motel. He walked to Room 212 and knocked on the door. Victim answered the door. Morrison entered the motel room and said, "Do you remember me?" C.C. recognized him. Morrison pulled a gun from his jacket and pointed it at Victim. C.C. heard him say something to Victim, but she did not understand what was said. Morrison then pointed the gun at C.C. Both C.C. and Victim began to move around the room, they had a "scuffle" in the corner, Morrison pushed C.C. off Victim, and Victim ran out the door. Morrison then pushed C.C. off of him, and Victim proceeded to run to the left on the motel walkway, heading toward the stairs. Morrison left the motel room and pursued Victim. D.D. heard Victim yell, "He [sic] got a gun." Victim ran down the stairs followed by Morrison. Morrison leaned over the bannister and shot Victim one time in the back of the head and Victim fell to the ground. Morrison ran to the Oldsmobile and got in the vehicle. V.S. backed out quickly, drove over a curb, scraped the curb, and damaged his vehicle. Morrison looked at V.S. and said, "I handled that." V.S. drove a bit, pulled over, and Morrison got out of the car and "put something

3

in the dumpster." Victim was taken by ambulance to a local hospital where she later died from the gunshot wound. On September 24, 2011, the day after the shooting occurred, C.C. identified Morrison from a police lineup as the person who shot Victim.

While investigating the shooting, officers located Victim's black Motorola flip phone near the front wall of Room 212 and a piece of paper that had two telephone numbers written on it – the phone numbers of V.S. and Morrison. Officers also examined several cell phones of those involved with the shooting. On September 23, 2011, at 7:44 p.m., Morrison sent V.S. a text message: "You got this bitch at motel call me and you got other plan you can't keep put pussy before freedom." There were also several calls on that day between Morrison's phone and Victim's phone, including a call at 10:39 p.m., 20 minutes before the shooting, from Morrison's phone to Victim's phone that was received and lasted for 50 seconds. At 10:59 p.m., a call was received on Victim's phone from D.D.'s phone that lasted 26 seconds. V.S.'s car was located with fresh damage to the undercarriage, consistent with the Oldsmobile having struck something recently.

A few years later, in 2013 or 2014, Morrison brought up the shooting to his then girlfriend, P.M. Out of the blue, Morrison confessed that he had shot Victim, and he stated the only evidence against him was a piece of paper with his phone number on it.

Morrison's counsel took the position at trial that D.D., not Morrison, murdered Victim. During closing arguments, trial counsel argued that the jury could not conclude beyond a reasonable doubt that Morrison shot Victim and that "[t]he evidence supports that probably someone else did the shooting[.]" Following the presentation of evidence at trial, the State offered and the trial court submitted verdict-directing instructions for murder in the first degree and armed criminal action based on murder in the first degree.

4

Morrison's trial counsel offered and the trial court submitted alternative verdict-directing instructions for the lesser-included offenses of murder in the second degree and voluntary manslaughter, along with armed criminal action for both murder in the second degree and voluntary manslaughter. A jury found Morrison guilty of the lesser-included offense of murder in the second degree and armed criminal action for murder in the second degree. The trial court entered judgment convicting Morrison of these offenses and sentenced him to life imprisonment for murder in the second degree and 100 years' imprisonment for armed criminal action, each sentence to be served consecutively to the other.

Morrison appealed his convictions and this Court affirmed the trial court's judgment. Morrison timely filed his *pro se* Rule 29.15 motion for post-conviction relief, counsel was appointed, and the motion court determined an amended Rule 29.15 motion was timely. The motion court held an evidentiary hearing at which Morrison and trial counsel testified. The motion court issued its Order Denying Movant's Motion to Vacate, Set Aside or Correct Judgment and Sentence Under Rule 29.15 denying Morrison's amended Rule 29.15 motion. This appeal follows.

**Standard of Review**

"Appellate review of the denial of [a Rule 29.15 motion for] post-conviction relief is limited to determining whether the motion court's findings of fact and conclusions of law are clearly erroneous." ***Holman v. State***, 694 S.W.3d 484, 489 (Mo. App. S.D. 2024) (citing Rule 29.15(k)). Appellate courts presume the motion court's findings are correct and a judgment is "clearly erroneous if the appellate court is left with the definite and firm impression that a mistake has been made." ***Id.*** We also defer "to the motion court's superior opportunity to judge the credibility of witnesses." ***Shockley v. State***, 579

5

S.W.3d 881, 892 (Mo. banc 2019) (quoting ***Barton v. State***, 432 S.W.3d 741, 760 (Mo.

banc 2014)).  The motion court is free to believe all, part, or none of the testimony

presented at the evidentiary hearing.  ***Holman***, 694 S.W.3d at 489.

**Analysis**

Morrison's sole point on appeal claims:

> The motion court clearly erred in overruling claim 8.a(2) in Mr. Morrison's
> Rule 29.15 motion for post-conviction relief because his trial counsel failed
> to act as a reasonably competent attorney, in violation of his rights to due
> process of law and to the effective assistance of counsel, as guaranteed by
> the Sixth and Fourteenth Amendments to the United States Constitution and
> by Article I, Sections 10 and 18(a) of the Missouri Constitution, in that his
> trial counsel was ineffective for offering lesser included offense instructions
> of second degree murder and voluntary manslaughter to the charged offense
> of first degree murder. Mr. Morrison was prejudiced by counsel's
> ineffectiveness because had his counsel not offered the lesser included
> offenses there is a reasonable probability Mr. Morrison would have been
> acquitted, given that Mr. Morrison's theory of defense was that he was not
> present and another person shot [Victim], Mr. Morrison had an alibi, one of
> the witness's descriptions of the shooter did not match Mr. Morrison,
> another witness testified the shooter was probably D.D., D.D. lied to police
> officers about his involvement multiple times, D.D. eventually admitted he
> was present at the scene when [Victim] was shot, D.D.'s phone number was
> the last number on [Victim's] phone before she died, and Mr. Morrison
> denied any involvement with the shooting or being at the scene.

Post-conviction relief based on a claim of ineffective assistance of counsel must

meet the requirements of ***Strickland v. Washington***, 466 U.S. 668, 687 (1984).  A

movant must demonstrate that (1) trial counsel failed to exercise the customary skill and

diligence that a reasonably competent attorney would perform under the circumstances

and (2) movant was prejudiced as a result of counsel's failure.  ***Ellswood v. State***, 689

S.W.3d 813, 819 (Mo. App. S.D. 2024).

> To show ineffective assistance of counsel, a movant must demonstrate
> "there is a reasonable probability that, but for counsel's unprofessional
> errors, the result of the proceeding would have been different." *Anderson v.*
> *State*, 196 S.W.3d 28, 33 (Mo. banc 2006) (quoting *Middleton v. State*, 103

6

S.W.3d 726, 733 (Mo. banc 2003)). A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *McFadden v. State*, 619 S.W.3d 434, 445 (Mo. banc 2020) (quoting *Tisius v. State*, 519 S.W.3d 413, 420 (Mo. banc 2017)).

*Jendro v. State*, 680 S.W.3d 585, 594 (Mo. App. S.D. 2023). There is a strong presumption that trial counsel's action was sound trial strategy. *Ryan v. State*, 660 S.W.3d 695, 698 (Mo. App. S.D. 2023). Reasonable trial strategy is not a basis for a claim of ineffective assistance of counsel no matter "how ill-fated" it appears in hindsight. *Id.*

Morrison argues that trial counsel was ineffective in offering the lesser-included murder in the second degree and voluntary manslaughter verdict-directing instructions offense because their strategy at trial was that he was not involved in Victim's death. To support his claim, Morrison presented the testimony of his trial counsel at the Rule 29.15 evidentiary hearing. Lead counsel for Morrison, A.M., testified his trial strategy and theory of defense was that Morrison was not at the scene of the crime and did not commit the charged offenses. A.M. confirmed it was never part of his trial strategy to argue that Morrison committed the murder but did not deliberate, which would constitute murder in the second degree instead of murder in the first degree. A.M.'s co-counsel, D.P., likewise testified that the trial strategy and theory of defense was that Morrison did not commit the offenses. D.P. also testified that no evidence was presented at trial that Morrison committed murder but did so without deliberation. D.P. testified, however, that the lesser-included instruction for the offense of murder in the second degree was offered for the chance of receiving a shorter sentence should the jury convict Morrison. Counsel explained:

7

[P]art of the problem is if you don't present a second-degree murder case –
a second-degree verdict for the jury to consider, a jury is stuck with either
finding him not guilty or finding him guilty of first-degree murder. And we
were presenting another option because we have to accept the possibility a
jury might think he did it and then hope, if they find him guilty of second-
degree murder, that he gets a sentence quite a bit less than the maximum.
Because the maximum on murder II would be life with parole.

So obviously we wouldn't want to push for that, but if they were to
find him guilty of second-degree murder, that gives him the possibility of
getting as little as ten years. May not be realistic, may not be likely, but it
presents that as a possibility.

Morrison testified at the evidentiary hearing that the inclusion of the lesser-included instructions was not discussed with him; that he would have liked to have been advised of his possible sentences if he was found guilty of a lesser-included offense, but that he "would have probably went with the lesser than the first degree because [he] felt that they were going to try to get [him] for first degree because they were saying that this murder was planned out and – you know."

A similar claim and identical arguments to those raised by Morrison in support of his point on appeal were addressed and rejected by the Eastern District of this Court in ***Jinkerson v. State***, 666 S.W.3d 318 (Mo. App. E.D. 2023), and we reach the same result here. In ***Jinkerson***, the movant was charged with murder in the first degree, among other charges. *Id.* at 320. Like the defense strategy in Morrison's trial, the defense strategy at Jinkerson's trial was an "all or nothing" defense, that another individual, not Jinkerson, committed the murder of victim. *Id.* at 322-23. Trial counsel submitted verdict-directing instructions for the lesser-included offenses of voluntary manslaughter and involuntary manslaughter. *Id.* at 323. The jury found Jinkerson guilty of involuntary manslaughter. *Id.* Jinkerson filed a Rule 29.15 motion for post-conviction relief alleging, in part, ineffective assistance of trial counsel for submitting verdict-directing instructions for the

lesser-included offense of involuntary manslaughter for which the jury found him guilty. *Id.* At the evidentiary hearing on Jinkerson's post-conviction motion, trial counsel testified that his trial strategy was an "all or nothing" defense that another individual committed the murder, but that he offered the lesser-included instruction as a "'safety valve' in case the jury disagreed with the defense's argument." *Id.* at 325. The motion court denied Jinkerson's post-conviction motion and Jinkerson appealed. *Id.* at 323.

On appeal, Jinkerson claimed the motion court erred in denying his post-conviction motion because trial counsel was ineffective for offering the lesser-included instruction of involuntary manslaughter to his changed offense of murder in the first degree in that his defense was "all or nothing." *Id.* at 325. The court held Jinkerson failed to overcome the strong presumption that trial counsel's decision to submit the lesser-included instruction was reasonable trial strategy. *Id.* The court's holding relied on the fact that involuntary manslaughter is statutorily designated as a lesser-included offense to murder and a "nested offense" of murder in the first degree. *Id.*; *see* sections 556.046 and 565.029.[4]

> Involuntary manslaughter is a "nested" lesser included offense of first- and second-degree murder. That is, it is distinguished from those greater offenses by one differential element, the culpable mental state, for which the state bears the burden of proof. *See [State v.] Randle*, 465 S.W.3d [477,] 479 [(Mo. banc 2015)] ("Lesser-included offenses that are separated from the greater offense by one differential element for which the state bears the burden of proof are referred to as 'nested' lesser-included offenses."). Nested lesser included offenses are comprised of a subset of the elements of the charge offense, and therefore the charged offense cannot possibly be committed without necessarily committing the lesser included offense. *State v. Jackson*, 433 S.W.3d 390, 404 (Mo. banc 2014).

---

[4] References to sections 556.046 and 565.029 are to RSMo 2016, including all applicable changes effective January 1, 2017.

*Jinkerson*, 666 S.W.3d at 325.

Pertinent to Morrison's claim, murder in the second degree and voluntary manslaughter are lesser-included offenses of murder in the first degree. *State v. Payne*, 488 S.W.3d 161, 164 (Mo. App. E.D. 2016). A person commits "murder in the first degree if he or she knowingly causes the death of another person after deliberation upon the matter." Section 565.020.1. A person commits murder in the second degree if he or she "[k]nowingly causes the death of another person or, with the purpose of causing serious physical injury to another person, causes the death of another person[.]" Section 565.021.1(1). A person commits voluntary manslaughter if he or she "[c]auses the death of another person under circumstances that would constitute murder in the second degree under subdivision (1) of subsection 1 of section 565.021, except that he or she caused the death under the influence of sudden passion arising from adequate cause[.]" Section 565.023.1(1). Section 565.029 sets forth the "[l]esser degree offenses in homicide cases" and provides that the lesser degree offenses of murder in the first degree are "[m]urder in the second degree under subdivisions (1) and (2) of subsection 1 of section 565.021" and "[v]oluntary manslaughter under subdivision (1) of subsection 1 of section 565.023[.]" Section 565.029.2. Section 556.046 provides that a person may be convicted of an offense "included in an offense charged" when either: (1) the included offense is "established by proof of the same or less than all the facts required to establish the commission of the offense charged[,]" or (2) "[i]t is specifically denominated by statute as a lesser degree of the offense charged[.]" Section 556.046.1. Here, both the murder in the second degree instruction and the voluntary manslaughter instruction tested for the same element of murder in the first degree, deliberation, and gave the jury an opportunity

10

to find Morrison guilty of a lesser-included offense if it refused to find the deliberation element of murder in the first degree.

Just like Jinkerson, Morrison has failed to overcome the strong presumption that trial counsel's offer of the lesser-included jury instructions was reasonable trial strategy. Specifically, the lesser-included offense of murder in the second degree for which the jury found Morrison guilty was a "nested" lesser-included offense of murder in the first degree. *Id.* at 325. Morrison could not have committed murder in the first degree without committing murder in the second degree. *See id.* ("Nested lesser included offenses are comprised of a subset of the elements of the charged offense, and therefore the charged offense cannot possibly be committed without necessarily committing the lesser included offense."). "To say the least, trial counsel's offering the lesser included offense instruction to avoid a murder conviction did not amount to deficient performance." *Id.* (citing ***Campbell v. State***, 598 S.W.3d 611 (Mo. App. S.D. 2020)) (holding defense counsel not ineffective for requesting instructions on lesser-included offenses because request was reasonable trial strategy). Like the court reasoned in ***Jinkerson***, "we need not engage in hindsight to assess the effectiveness of that strategy: the jury convicted [Morrison] of [murder in the second degree], not first-degree murder as charged, a result not possible without the submission of the [murder in the second degree] instruction. *Id.* Moreover, although trial counsel testified their trial strategy was an "all or nothing" approach, D.P. testified that he wanted to keep the lesser-included offenses as an option for the jury, so that if convicted of the lesser offense, Morrison would have the possibility of receiving a shorter sentence than if convicted for murder in the first degree. Even if it could be found to also be reasonable trial strategy for trial

11

counsel to not submit the lesser-included verdict-directing instructions, "[i]t is not ineffective assistance of counsel to pursue one reasonable trial strategy to the exclusion of another reasonable trial strategy." **Ryan**, 660 S.W.3d at 698-99 (quoting **Anderson**, 196 S.W.3d at 33); *see also* **Campbell**, 598 S.W.3d at 617 (holding trial counsel's decision to submit lesser-included instructions in an "all-or-nothing" defense strategy "was well-within the parameters of conduct constituting that of a reasonably competent attorney").

Morrison further failed to demonstrate prejudice as a result of trial counsel's submission of the lesser-included jury instructions. Morrison testified that he would have probably chosen to submit the lesser-included instructions had they been explained to him during trial. Prejudice sufficient to satisfy the requirements of **Strickland** is a reasonable probability that, but for trial counsel's alleged error, the result of the trial could have been different. **Miller-Kirkland v. State**, 697 S.W.3d 867, 877 (Mo. App. W.D. 2024). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." **Id.** (quoting **Deck v. State**, 68 S.W.3d 418, 429 (Mo. banc 2002)). Morrison's testimony that he probably would have chosen to submit the lesser-included instructions as trial counsel chose to do does not support a finding that but for trial counsel submitting the lesser-included instructions the result of the trial would have been different.

Morrison also offered no support for his claim that the jury would have acquitted him but for the submission of the murder in the second degree instruction. Considering the overwhelming evidence that Morrison knowingly caused the death of Victim after deliberation sufficient to support a finding of guilty on the original charged offense of

12

murder in the first degree, he simply cannot demonstrate prejudice for his conviction of the lesser crime of murder in the second degree. *See Jinkerson*, 666 S.W.3d at 326 (citing *Walker v. State*, 34 S.W.3d 297, 303 Mo. App. S.D. 2000)) ("The relative strength or weakness of the state's case is significant in deciding if any deficiencies in trial counsel's performance were prejudicial."). Point I is denied, and the motion court's denial of post-conviction relief is affirmed.


JENNIFER R. GROWCOCK, C.J. – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

MARY W. SHEFFIELD, J. – CONCURS